# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY McCOY, SR., et al., | |
| Plaintiffs, | NO. 3:06-CV-1142 |
| v. | (JUDGE CAPUTO) |
| JOHN EDWARDS, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are the Motion for Summary Judgment of Defendant Michael Tribendis (Doc. 86) and the cross-Motion for Summary Judgment of Plaintiff Margarita McCoy (Doc. 90). Plaintiffs, including Margarita McCoy, bring a number of claims against Defendant Tribendis pursuant to 42 U.S.C. § 1983, a claim pursuant to 42 U.S.C. § 1985(3), as well as numerous state common law claims. Also before the Court is a motion by all Plaintiffs to strike Defendant Tribendis' Statement of Facts to which he contends there is no dispute, submitted in support of his motion for summary judgment pursuant to Local Rule 56.1. (Doc. 100.) For the reasons stated below, the Court will grant Plaintiffs' Motion to Strike Defendant Tribendis' Statement of Facts. Consequently, the Court will also strike Defendant Tribendis' Motion for Summary Judgment for failure to comply with Local Rule 56.1. Finally, the Court will deny Plaintiff Margarita McCoy's Motion for Summary Judgment.

This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction") and over their state law claims pursuant to 28 U.S.C. § 1367(a) ("supplemental jurisdiction").

**BACKGROUND**

The present suit arises out of several related incidents which occurred on June 16, 2004, between members of the plaintiff McCoy family (as well as a son's fiancé and her sister) and several municipal police officers. That day, Officers Michael Tribendis ("Tribendis") and Michael Stevenson ("Stevenson") responded to a radio dispatch regarding an altercation at an auto parts salvage yard between the yard owners and Plaintiff Jeffrey McCoy, Sr. ("Mr. McCoy, Sr."). The officers ultimately advised Mr. McCoy, Sr. to leave the premises of the salvage yard. (Am. Compl. ¶¶ 21-26, Doc. 58; Def. Tribendis Answer ¶¶ 21-26, Doc. 61 (hereinafter "Answer").) Mr. McCoy, Sr. began to walk away along the road and was soon picked up by a vehicle[1] driven by Mr. McCoy, Sr.'s son, Plaintiff Jeffrey McCoy, Jr. ("Mr. McCoy, Jr."). Mr. McCoy, Jr.'s fiancé, Plaintiff Stephanie Rose Henry ("Ms. Henry"), and her sister, Plaintiff Gylaine Simone Threatt ("Ms. Threatt") were passengers in the car. (Am. Compl. ¶¶ 27, 30; Answer ¶¶ 27, 30.)

Shortly thereafter, Tribendis and Stevenson, as well as Officers John Edwards ("Edwards") and Jason Height ("Height") were involved in a traffic stop of Plaintiffs' vehicle. During the course of the stop, Mr. McCoy, Sr., Mr. McCoy, Jr., Ms. Henry, and Ms. Threatt were arrested. (Am. Compl. ¶¶ 33, 39, 45-48; Answer ¶¶ 33, 39, 45-48.)

Later that day, Mr. McCoy, Sr.'s wife and Mr. McCoy, Jr.'s mother, Margarita McCoy ("Mrs. McCoy"), went to the police station where her son was in custody to inquire about his arrest. There, she was involved in an argument with Edwards and was ultimately arrested by Edwards and Tribendis. (Am. Compl. ¶¶ 53, 56-58; Answer ¶¶ 53, 56-58.)

---

[1] The vehicle was allegedly owned by Mr. McCoy, Sr.'s daughter-in-law, Plaintiff Jeannie McCoy. (Am. Compl. ¶ 29.)

2

Plaintiffs filed a complaint against Officers Edwards, Stevenson, Height, and Tribendis on June 6, 2006. (Doc. 1.) Deadlines for dispositive motions and the suit's trial schedule were temporarily stayed by the Court pending the release of Edwards from military service. (Doc. 45.) During that time, Plaintiffs sought and received leave of the Court to file an amended complaint against the four officers, which was filed on June 22, 2007. (Doc. 58.) In their amended complaint, Plaintiffs raise numerous claims pursuant to 42 U.S.C. § 1983, a claim pursuant to 42 U.S.C. § 1985(3), as well as numerous state common law claims, based on their arrests and surrounding events. Officer Tribendis filed an answer to the amended complaint. (Doc. 61.)

After Edwards' release from military duty, the parties agreed to a new case management plan, which was approved by the Court. (Doc. 70.) Plaintiffs then moved to voluntarily dismiss certain claims. (Doc. 76.) The Court issued an Order granting the motion. (Doc. 77.) In addition, Plaintiffs voluntarily dismissed their claims against Officers Edwards, Stevenson, and Height. (Docs. 106, 108.) Tribendis is the only remaining defendant.

Tribendis filed a Motion for Summary Judgment on November 3, 2008. (Doc. 86.) He moves for summary judgment against Plaintiffs as to all claims remaining against him. He also filed a supporting brief (Doc. 89) and Statement of Facts as to which he contends there is no dispute (Doc. 87), submitted pursuant to Local Rule 56.1. Plaintiffs filed a brief in opposition to Tribendis' motion (Doc. 102) and a Counter-Statement of Facts (Doc. 101), submitted pursuant to Local Rule 56.1.

Also on November 3, 2008, Margarita McCoy filed a cross-Motion for Summary Judgment as to her § 1983 claims for violation of the Fourth Amendment and retaliation in

3

violation of the First Amendment. (Doc. 90.) Her motion was initially filed against both Tribendis and Edwards, but was voluntarily withdrawn as to Edwards. (Doc. 98.) She filed a supporting brief (Doc. 91) and Statement of Facts (Doc. 92). Tribendis filed a brief in opposition to Mrs. McCoy's motion (Doc. 99), but did not file a Counter-Statement of Facts.

On December 12, 2008, Plaintiffs also filed a Motion to Strike from the record the Statement of Facts submitted by Tribendis in support of his Motion for Summary Judgment pursuant to Local Rule 56.1. (Doc. 100.) Plaintiffs argue that Tribendis' Statement of Facts should be struck for non-compliance with the Local Rule. Tribendis failed to file a brief in opposition to this motion.

## LEGAL STANDARD

### I. Local Rule 56.1

Local Rule 56.1 of the U.S. District Court for the Middle District of Pennsylvania provides:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

4

M.D. Pa. Local R. 56.1.

## II. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable

5

to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.   Plaintiffs' Motion to Strike

Plaintiffs move to strike each fact proffered in Tribendis' Statement of Facts to which he contends there is no dispute, for failure to comply with Local Rule 56.1. (Doc. 100.) Plaintiffs argue that each averred fact in Tribendis' Statement (Doc. 87) is non-compliant with the Local Rule because it is unsupported by a reference to the record. Tribendis failed to file a brief in opposition to Plaintiffs' motion.

Under Local Rule 7.6 of the U.S. District Court for the Middle District of Pennsylvania, any party who fails to fails to file a responsive brief is deemed not to oppose the opposing party's motion. The Local Rule states:

> Any party opposing any motion shall file a responsive brief ... within fifteen (15) days after service of the movant's brief, or, if a brief in

> support of the motion is not required under these rules, within five (5) days after service of the motion. Any respondent who fails to comply with this rule shall be deemed not to oppose such motion.

M.D. Pa. Local R. 7.6.

Plaintiffs filed their motion and brief in support on December 12, 2008. (Docs. 100, 103.) Because Tribendis failed to file any responsive brief, he is deemed not to oppose Plaintiffs' motion.

Even if the motion were opposed, Plaintiffs are correct that each fact averred in Tribendis' Statement of Facts fails to comply with Local Rule 56.1. The Local Rule provides, in relevant part, "statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." M.D. Pa. Local R. 56.1. None of the fifty-three (53) statements of fact in Tribendis' Statement makes a supporting reference to the record.

For the foregoing reasons, the Court will grant Plaintiffs' Motion to Strike Tribendis' Statement of Facts. Because the Statement of Facts will be stricken from the record, the Court will also strike Tribendis' Motion for Summary Judgment for non-compliance with Local Rule 56.1. *See Hartshorn v. Throop Borough*, No. 07-cv-1333, 2009 U.S. Dist. LEXIS 22372, at *8-*9 (M.D. Pa. Mar. 19, 2009) (striking movant's Statement of Facts and Motion for Partial Summary Judgment where Statement failed to comply with Local Rule 56.1).

## II. Plaintiff Margarita McCoy's Motion for Summary Judgment

Mrs. McCoy moves for summary judgment as to two of her § 1983 claims.[2] First, she

---

[2] To prevail on a § 1983 claim, a plaintiff must demonstrate that a state actor deprived her of a federally protected right, privilege, or immunity. 42 U.S.C. § 1983; *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). There is no dispute that Tribendis, in his role as a police officer, is a state actor.

7

moves for summary judgment as to her claim that she was arrested without probable cause in violation of the Fourth Amendment's prohibition against unreasonable seizures. Second, she moves for summary judgment as to her claim that Tribendis participated in her arrest in retaliation for speech protected by the First Amendment. Tribendis argues that he did not violate Mrs. McCoy's rights under either amendment and, even if he did, he is entitled to qualified immunity.

### A. Local Rule 56.1

Initially, the Court notes that Mrs. McCoy properly filed a separate Statement of Facts to which she contends there is no dispute in support of her motion, but Tribendis did not file a Counter-Statement in compliance with Local Rule 56.1. Because Tribendis did not file a Counter-Statement controverting the facts enumerated in Mrs. McCoy's statement, the Court will deem all facts in her statement to be admitted, in accordance with the Local Rule. *See* M.D. Pa. Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

### B. Facts Relevant to Plaintiff's Motion

The relevant facts averred in Mrs. McCoy's Statement, and deemed admitted, are as follows. In the early evening of June 16, 2004, Mrs. McCoy went to the Larksville police station to inquire about her son's arrest. (Pl.'s Statement of Facts ¶ 14, Doc. 92.) When she arrived, Edwards and Stevenson, with the help of Tribendis, were typing reports. (*Id*. ¶ 15.) She began asking Edwards and Tribendis questions about her son's arrest. (*Id*. ¶ 16.) Edwards provided limited information, advising Mrs. McCoy that because her son was an adult, he had no obligation to speak with her about the incident. (*Id*. ¶ 17.) She began to

8

question Edwards' judgment on the arrest and to tell him that she had a right to know what was going on with her son. He then told her she had to leave the station. (*Id*. ¶ 18.) As she turned to leave the station she told Edwards that he was a "stupid a - - hole." Tribendis and Edwards then followed her out of the station and arrested her for disorderly conduct. She was charged with disorderly conduct under 18 Pa. Cons. Stat. § 5503(a)(3). (*Id*. ¶¶ 19-20.)

Mrs. McCoy relies in large part on the deposition testimony of Edwards, Tribendis, and Jeannie McCoy, as well as her own, as support for the facts in her Statement. While a review of these depositions reveals that the above-cited sequence of events is generally agreed upon, it is also clear that the finer details of what took place are contested. The depositions of Mrs. McCoy and Edwards, in particular, describe the events in detail and paint very different pictures.

According to Mrs. McCoy's deposition testimony, when she began inquiring about her son's arrest, Edwards "went crazy," apparently realizing she was a member of the McCoy family, and started using profanities and demanding she leave the station. (Margarita McCoy Depo. 45, Ex. 9, Doc. 93.) He told her that her son was a grown man and she did not need to be asking about him. Both Edwards and Tribendis told her to get out of the station. (*Id*. at 46.) She complied and as she walked out the door, said "This don't make no doggone sense."[3] (*Id*. at 47.) The two officers then followed her out of the station and arrested her. (*Id.*) When she protested, Edwards said, "Oh, you called me an a - - hole. You're under arrest." (*Id.*)

---

[3] This statement conflicts with Mrs. McCoy's averment in her Statement of Facts that she called Edwards a "stupid a - - hole." (Pl.'s Statement of Facts ¶ 19.) The Court will rely on the latter statement because it is proffered as a fact to which Mrs. McCoy contends there is no dispute.

9

According to Edwards' deposition testimony, when she inquired he told Mrs. McCoy that her son would be arraigned and taken to county jail. She then began yelling and accusing Edwards of acting illegally based on her son's race. He told her he was under no obligation to talk to her about her son because he was an adult. She then got angrier and began cursing. When she began cursing, Edwards told her she had to leave. (Edwards Depo. 95-96, Ex. 5, Doc. 93.) He denies he ever cursed back at her. (*Id*. at 110-111.) She began to leave, but stood over the threshold of the station door and continued to yell and curse. She then called Edwards an a - - hole and slammed the door. Edwards walked out after her and saw she was standing in front of his police cruiser, continuing to yell. There was a playground behind the station and several people were walking nearby. He informed her she was under arrest, but she ran around his cruiser several times with him in pursuit. (*Id*. at 96-97.) Tribendis came outside while Edwards was chasing Mrs. McCoy around the vehicle. She then stopped and allowed the officers to arrest her. (*Id*. 107-108.)

B. Fourth Amendment Claim

Mrs. McCoy argues that Tribendis lacked probable cause to arrest her, making her arrest unconstitutional under the Fourth Amendment's prohibition on unreasonable seizures. Tribendis argues that Edwards' account of events evidences that he had probable cause to arrest Mrs. McCoy.

A person may not be arrested except upon probable cause. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). The Supreme Court has adopted a "totality of the circumstances" approach to the existence of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As such, the presence of probable cause is most often regarded as a factual

question for the jury in civil actions brought under § 1983. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000)*.* "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt," but it does require "more than mere suspicion." *Orsatti,* 71 F.3d at 482-83.

Mrs. McCoy was arrested and cited for disorderly conduct under the Pennsylvania Criminal Code, 18 Pa. Cons. Stat. § 5503(a), which provides:

> (a) Offense defined. – A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> >
> > (2) makes unreasonable noise;
> >
> > (3) uses obscene language, or makes an obscene gesture; or
> >
> > (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

"Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. 'The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.'" *Pennsylvania v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (quoting *Pennsylvania v. Greene*, 189 A.2d 141, 144 (Pa. 1963)).

11

Mrs. McCoy was issued a citation for violating 18 Pa. Cons. Stat. § 5503(a)(3). It is clear that she did not violate this subsection of the statute, as Pennsylvania courts have defined "obscene." To determine whether language or gestures are "obscene" within the meaning of the disorderly conduct statute, Pennsylvania courts apply the obscenity test articulated by the U.S. Supreme Court in *Miller v. California*[4] and applied to determine whether a communication falls outside the protection of the First Amendment.[5] *See, e.g., Pennsylvania v. Kelly*, 758 A.2d 1284, 1286 (Pa. Super. Ct. 2000)*; Pennsylvania v. Bryner*, 652 A.2d 909, 911-912 (Pa. Super. Ct. 1995). An important part of the *Miller* test asks whether the communication appeals to the prurient interest. 413 U.S. 15, 24 (1973). Noting this, the Pennsylvania Superior Court has held that a defendant's acts of giving a street department employee "the finger" and saying "f - - ck you, a - - hole," while disrespectful, insulting, and offensive, were not "obscene" because they had nothing to do with sex. *Kelly*, 758 A.2d at 1288. Similarly here, the record supports the conclusion that Mrs. McCoy used

---

[4] *Miller v. California* sets forth the following guidelines in determining what communications constitute "obscenity":

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. 15, 24 (1973) (internal quotation marks and citations omitted).

[5] Pennsylvania courts employ the same test that determines the scope of First Amendment protection because the Pennsylvania disorderly conduct statute cannot be written, applied, or construed to punish speech protected by the First Amendment. *Gilles v. Davis*, 427 F.3d 197, 204 (3d Cir. 2005); *Pennsylvania v. Mastrangelo*, 414 A.2d 54, 58 (Pa. 1980).

profanities, but there is no suggestion that she used language of a sexual nature.

However, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Based on Edwards' account of events, a reasonable jury could find that Tribendis had probable cause to arrest Mrs. McCoy under subsection (a)(1) of the statute. First, while most of her conduct took place inside a police station, it can nonetheless constitute a "public inconvenience." *See Pennsylvania v. Coolbaugh*, 416 A.2d 563, 565 (Pa. Super. Ct. 1979) (holding the word "public" in the statute means any place to which the public has access).

Second, a reasonable jury could find that her behavior was "tumultuous" within the meaning of the statute. Edwards' version of events, relied on by Tribendis, is comparable to circumstances under which the Pennsylvania Superior Court upheld a conviction under § 5503(a)(1) in *Pennsylvania v. Love*, 896 A.2d 1276 (Pa. Super. Ct. 2006). There, defendant attended his stepson's court hearing and, upon an unfavorable disposition at the close of proceedings, became vocally agitated, loud, and disruptive in the courtroom. *Id*. at 1279. Defendant continued to be loud and disruptive outside the courtroom after being escorted out by a deputy sheriff. *Id*. In upholding his conviction, the court reasoned:

> [A]ll of Appellant's acts took place in a public courtroom in front of court personnel, parties and witnesses to court proceedings, and spectators. Appellant and [his wife], by their actions, monopolized this public space, preventing its legitimate use during their continuing outbursts. Appellant persisted in his behavior in an anteroom of the courtroom, from which his yelling and protests could still be heard publicly. There is no question that Appellant's behavior fits the definition of "tumultuous," as it was marked by overwhelming turbulence and upheaval.

*Id*. at 1285-86. By Edwards' account of events, Mrs. McCoy entered a public building and

13

began yelling, using profanities, and being disruptive. After being told to leave, she continued to be loud and disruptive outside the station where there was a nearby public park and other people in the vicinity. As in *Love*, a jury could find that she "monopolized [the] public space, preventing its legitimate use during [her] continuing outbursts." *Id*. at 1285. Thus, the Court cannot rule that Tribendis lacked probable cause to arrest Mrs. McCoy as a matter of law.

Tribendis also argues that he is immune from Mrs. McCoy's claims under the doctrine of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether qualified immunity applies is a two-step process: "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006). Second, "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'" *Id*. A right is clearly established when its meaning is "sufficiently clear that a reasonable official would understand what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The U.S. Supreme Court recently held that there is no mandatory sequence in applying the two steps of the analysis. *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 2009 U.S. LEXIS 591 (2009). Thus, determination that there is a dispute of fact as to the first step does not necessarily preclude the application of qualified immunity if the right at

14

issue was not clearly established. However, the factual dispute that prevents a determination of probable cause also prevents a determination of whether the Fourth Amendment right at issue was clearly established. While it is certainly clearly established that probable cause is a prerequisite to arrest, the inquiry must be particular to the circumstances faced by the officer at time. *Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000). Unless there is precedent that would make it "apparent" to a reasonable officer that probable cause was lacking, he is entitled to qualified immunity. *Id*.

Here, the record evidences two diverging versions of the incident at the police station. By Mrs. McCoy's account, Edwards was the instigator of the disruption and her only transgression was to mutter "stupid a - - hole" as she walked out the door. By Edwards' account, Mrs. McCoy instigated the disruption, which continued both inside and outside the station. On one hand, the Pennsylvania Supreme Court has held that uttering a single profane statement to a police officer while walking away from him does not constitute disorderly conduct or give rise to probable cause under the Pennsylvania statute. *Hock*, 728 A.2d at 947. On the other hand, as discussed above, the Pennsylvania Superior Court has held that loud and disruptive conduct in a place where public business is carried on can sustain a disorderly conduct conviction. *Love*, 896 A.2d at 1285-86. The dispute of fact makes it impossible at this juncture to determine whether Tribendis is entitled to qualified immunity.

For the foregoing reasons, the Court will deny Mrs. McCoy's motion for summary judgment as to her Fourth Amendment claim.

15

C.   First Amendment Retaliation Claim

Mrs. McCoy alleges that Tribendis retaliated against her for exercising her First Amendment right to free speech by participating in her arrest.  Specifically, she argues that the officers arrested her in response to her comment to Edwards while walking out of the station.

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  A claim for First Amendment retaliation has three elements: (1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation.  *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

"[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel - all speech is protected by the First Amendment."  *Eichenlaub v. Twp. of Indiana*, 282-83 (3d Cir. 2004).  As discussed above, Mrs. McCoy did not engage in obscene speech, nor is there any suggestion by the parties that her speech was libelous.  Finally, her comments while exiting the station do no constitute "fighting words."  Fighting words are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."  "To be punishable, words must do more than bother the listener; they must be nothing less than 'an invitation to exchange fisticuffs.'"  *Johnson v. Campbell*, 332 F.3d 199, 212 (3d Cir. 2003) (quoting *Texas v. Johnson*, 491 U.S. 397, 409 (1989).  An insulting statement made to a police officer, whether

16

profane or not, while walking away from him is not speech inciting an immediate breach of the peace. *See Hock*, 556 A.2d at 947 (finding that a single profane comment, made to a police officer while walking away does not risk an immediate breach of the peace); *see also Johnson v. Campbell*, 332 F.3d 199, 214 (3d Cir. 2003) ("swear words, spoken to a police officer ... are not 'fighting words'"). Moreover, the U.S. Supreme Court has held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," and includes the ability "to oppose or challenge police action." *City of Houston, Texas v. Hill*, 482 U.S. 451, 461, 462-63 (1987). Therefore, Mrs. McCoy's comments while exiting the police station were protected speech under the First Amendment.

Regarding the second element, the Third Circuit Court of Appeals has stated that "[t]he effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimus*." *McKee v. Hart*, 436 F.3d 165 (3d Cir. 2006) (internal quotation marks omitted). A reasonable jury could find that arrest is more than *de minimus*. *Sershen v. Cholish*, No. 07-cv-1011, 2007 U.S. Dist. LEXIS 79627, at *25 (M.D. Pa. Oct. 26, 2007). Mrs. McCoy has established the second element for summary judgment purposes.

As to the third element, causation, there exists a genuine dispute of fact. Mrs. McCoy argues that the timing of her arrest definitively establishes that it was carried out in response to her comment while leaving the station. She points to deposition testimony of Tribendis in which he testified that he and Edwards heard the remark, looked at each other, asked each other if they had heard what she said, then immediately rose and moved to arrest her.

17

(Tribendis Depo. 57, 60.)  Mrs. McCoy is correct that causation may be established by evidence of timing which is "unusually suggestive" of retaliatory motive.  *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d. Cir. 2003).  However, the facts viewed in the light most favorable to Tribendis also support the conclusion that he arrested her because, based on the entire encounter, he believed he had probable cause to arrest for disorderly conduct.  In *Pulice v. Enciso*, for example, the Third Circuit Court of Appeals held that a plaintiff "failed to provide a factual basis for her retaliation claim" because there was probable cause for her arrest: "She was not arrested for expressing her views, but because she and her husband *acted* unlawfully...." 39 Fed. App'x 692, 696 (3d Cir. 2002) (not precedential);  *see also Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) (existence of probable cause precludes First Amendment retaliation claim); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (because officer had probable cause to arrest, "an inquiry into the underlying motive for the arrest need not be undertaken").  Thus, there exists a material dispute of fact regarding the third element of the retaliation claim.

As discussed above, the Court may still grant Tribendis' motion for summary judgment on qualified immunity grounds if the right at issue was not clearly established at the relevant time.  However, it has long been clearly established that an officer may not arrest a person in retaliation for her protected speech. *See Losch v. Parkesburg*, 736 F.2d 903, 907-908 (3d Cir. 1984) ("institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983"); *see also Pomykacz v. Borough of W. Wildwood*, 438 F. Supp. 2d 504, 512 (D.N.J. 2006) (same).  There is no basis for a grant of qualified immunity as to this claim

18

Based on the above, the Court will deny Mrs. McCoy's motion for summary judgment as to her First Amendment retaliation claim.

**CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiffs' Motion to Strike from the record Tribendis' Statement of Facts submitted in support of his Motion for Summary Judgment. (Doc. 100.) Because the Court will strike all of Tribendis' Statement of Facts, I will also strike his Motion for Summary Judgment (Doc. 86) for failure to comply with Local Rule 56.1. Finally, the Court will deny Mrs. McCoy's Motion for Summary Judgment. (Doc. 90.)

An appropriate Order follows.

| June 23, 2009 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo<br>United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY McCOY, SR., et al., | NO. 3:06-CV-1142 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| JOHN EDWARDS, et al., | |
| Defendants. | |

## ORDER

**NOW**, this ___23rd___ day of June, 2009, **IT IS HEREBY ORDERED** that:

(1) Plaintiffs' Motion to Strike Defendant Michael Tribendis' Statement of Facts in Support of Defendant's Motion for Summary Judgment (Doc. 100) is **GRANTED.**

(2) Defendant's Statement of Facts (Doc. 87) is **STRICKEN** from the record.

(3) Defendant's Motion for Summary Judgment (Doc. 86) is **STRICKEN** from the record.

(4) Plaintiff Margarita McCoy's Motion for Summary Judgment (Doc. 90) is **DENIED**.

                                                                 /s/ A. Richard Caputo
                                                                 A. Richard Caputo
                                                                 United States District Judge